J-A04024-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KYLIE MAJOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FIVE STAR EQUIPMENT INC. | : | No. 735 MDA 2025 |

Appeal from the Judgment Entered May 9, 2025
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s):  2020-03550

BEFORE:  PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:                          **FILED JUNE 30, 2026**

Appellant, Kylie Major, appeals from the judgment[1] entered in the Lackawanna County Court of Common Pleas, against Appellant and in favor of Appellee, Five Star Equipment Inc. ("Five Star").  We affirm.

The relevant facts and procedural history of this case are as follows.  On September 14, 2020, Appellant filed a complaint against Five Star and GBGDS Equipment Company, Inc.[2]  The complaint alleged that on October 8, 2019, at 6:55 a.m., Appellant was crossing the street on Lycoming Creek Road when

_____

[1] Appellant purports to appeal from the order denying her post-trial motion. Nevertheless, an appeal properly lies from the entry of judgment following the disposition of any post-trial motions.  ***See Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 514 (Pa.Super. 1995) (*en banc*).  The record reflects that judgment was entered on May 9, 2025, the same day that the court denied Appellant's post-trial motion.  We have amended the caption accordingly.

[2] The claims against GBGDS Equipment Company, Inc. were subsequently dismissed and are not at issue in this appeal.

she was struck by the driver's side mirror of a Dodge Ram 5500 owned by Five Star and operated by Todd Gesselman, an employee of Five Star. Appellant did not assert claims against Mr. Gesselman individually but claimed that Mr. Gesselman was acting as Five Star's agent and thus, Five Star was vicariously liable for Mr. Gesselman's conduct. Appellant further asserted direct claims against Five Star, alleging that Five Star was negligent in its hiring, supervision and retention of Mr. Gesselman and that Five Star was negligent in entrusting the vehicle to Mr. Gesselman. The complaint additionally sought punitive damages on the grounds that Five Star engaged in reckless conduct vicariously, based on Mr. Gesselman's conduct, and directly, in hiring, supervising and entrusting Mr. Gesselman with the vehicle.

On November 13, 2023, Five Star filed a motion for partial summary judgment seeking to dismiss all of Appellant's claims for punitive damages. Five Star noted that surveillance video showed that Appellant was crossing the street diagonally on a dark and foggy morning in a location where there was not a designated crosswalk when she was struck. Additionally, Appellant was stopped in the middle of the road with her back to the northbound traffic, the direction in which Mr. Gesselman was traveling, when the accident occurred. In his deposition, Mr. Gesselman stated that on the morning of the accident, he woke up at approximately 5:30 a.m. and affirmed that he did not have difficulty sleeping the night before. He left his house at 6:00 a.m. and was approximately five minutes away from work when the accident occurred. The impact with Appellant occurred two to three seconds after Mr. Gesselman

changed lanes from the right lane to the left lane. Immediately prior to merging, there was a vehicle in front of Mr. Gesselman in the right lane. While merging, he looked in the driver's side mirror to ensure that it was safe to merge, and he did not see Appellant in the roadway before the impact. Mr. Gesselman reported that he had his headlights on and estimated that he was traveling at a speed of 40mph in a 35mph zone. Further, based on the police report and depositions of the responding officers, there was no evidence that Mr. Gesselman was under the influence of drugs or alcohol at the time of the accident. During their depositions, the responding officers stated that they did not believe Mr. Gesselman's speed contributed to the accident. Based on the foregoing, Five Star argued that Appellant failed to produce any support for her claim that Mr. Gesselman or Five Star acted recklessly such that punitive damages were warranted.

On November 30, 2023, Appellant filed a response to the motion for partial summary judgment asserting that there were genuine issues of material fact as to whether Five Star engaged in reckless conduct such that the issue of punitive damages should be submitted to the jury. Specifically, Appellant claimed that Five Star failed to keep accurate records to ensure that its drivers were not operating a vehicle when fatigued and inattentive. Additionally, Appellant noted that Joseph Hudak, the accident reconstruction expert retained by Appellant, estimated that Mr. Gesselman was traveling at a speed of 46mph. Mr. Hudak further opined that if Mr. Gesselman was driving attentively and traveling at the posted speed limit, he would have had

sufficient time to avoid the collision with Appellant.

On May 20, 2024, following oral argument, the court granted Five Star's motion for partial summary judgment and dismissed all of Appellant's claims for punitive damages. That same day, the court issued an order scheduling the trial for November 18, 2024. On July 30, 2024, Five Star filed a motion seeking to bifurcate the trial into liability and damages phases. Five Star argued that bifurcation was required to prevent unfair prejudice to Five Star based on the risk that any verdict rendered by the jury would be tainted by sympathy for Appellant's injuries. On August 12, 2024, Appellant filed a response, opposing Five Star's motion to bifurcate. On October 21, 2024, the parties filed a joint pre-trial order, which listed the witnesses the parties expected to call. The pre-trial order further specified that the parties estimated the trial would take five days.

On October 28, 2024, the court entered an order granting Five Star's motion to bifurcate the trial. In its order, the court rejected Five Star's argument that bifurcation was necessary to prevent unfair prejudice to Five Star due to the risk of the jury sympathizing with Appellant's injuries. Rather, the court noted that it only scheduled five days for trial based on the parties' estimation. Based on the list of witnesses the parties intended to call, the court determined that it was highly unlikely that the parties would conclude trial within the allotted time period. To avoid unnecessary costs and facilitate judicial economy, the court determined that bifurcation was appropriate in this case. The court bifurcated the trial into liability and damages phases,

specifying that "the jury to be selected on November 18, 2024, will decide only the issue of liability involving questions of negligence and causation[.]" (Bifurcation Order, filed 10/28/24, at 10).

On November 12, 2024, Appellant filed a proposed verdict slip with the following questions:

> 1. Do you find that [Mr.] Gesselman, as the employee of [Five Star] was negligent?  Yes___  No___
>
> 2. Do you find that [Five Star] was negligent for the hiring and supervision of [Mr.] Gesselman?  Yes___ No___
>
> 3. Do you find that [Five Star] was negligent in entrusting their commercial motor vehicle to [Mr.] Gesselman? Yes___  No___
>
> 4. Was Kylie Major negligent?  Yes___  No___
>
> The negligence of the parties must equal 100%
>
> [Mr.] Gesselman, as employee of Five Star          ___
>
> [Five Star] for negligent hiring and supervision          ___
>
> [Five Star] for negligent entrustment          ___
>
> Kylie Major          ___
>
> Total          100%

(Appellant's Proposed Verdict Slip, filed 11/12/24).

The liability phase of the trial commenced on November 18, 2024.  The parties completed presenting their evidence on November 20, 2024.  During the charging conference, the court inquired whether the parties had any

objections to the verdict sheet that it intended to give the jury. The verdict sheet drafted by the court differed from Appellant's proposed verdict sheet in that it only included one general question as to whether Five Star was negligent. It further only allotted one line for the jury to apportion a percentage of causal negligence to Five Star. Appellant's counsel objected as follows:

> [Appellant's Counsel]: … [W]ith regard to the verdict slip, they have disputed agency, and as a result of them disputing the agency, the claims for negligent hiring, supervision and entrustment are standalone claims for which the jury can find an apportionment for Five Star. We just have one line for Five Star, which doesn't take into consideration the other standalone claims against them for hiring and supervision and then entrustment.
>
> I thought that it would be – there would essentially be, was the Five Star through Mr. Gesselman negligent? Was Five Star negligent for the hiring and supervision – which those claims morph into one under the restatement. And then was Five Star negligent for the entrustment? And then was Kylie Major negligent? And then obviously a factual cause for each of those particular areas and then an apportionment between those claims.

(N.T. Trial, 11/20/ 24, at 83-84). Five Star's counsel objected to the format of the verdict slip that Appellant requested, noting that all of Appellant's claims related to the negligence of one party. The court agreed, finding that it was unnecessary to include multiple lines to apportion negligence between one defendant. The court further noted that the jury instructions would sufficiently inform the jury regarding all the theories of liability they could find and assign to Five Star.

While instructing the jury, the court detailed all the theories of negligence Appellant asserted against Five Star. The court summarized the relevant portion of its instructions as follows:

> The jury was provided with separate instructions concerning the vicarious liability of Five Star for the conduct of [Mr.] Gesselman and Five Star's independent liability for negligent hiring and supervision of [Mr.] Gesselman and negligent entrustment of a vehicle to him. With respect to Five Star's vicarious liability, the jury was advised that [Appellant] "claims that [Mr.] Gesselman was acting as [Five Star's] agent at the time of the accident," and pursuant to Pa.SSJI (Civ) § 6.00 (6th ed.), the jury was instructed that "[a]n agent is someone who agrees to act for someone else, called the principal, under the principal's control" and that "[a] principal may be legally responsible for the negligence of its agent." [(N.T. Trial, 11/20/24, at 102)]. Since Five Star asserted at trial "that [Mr.] Gesselman's conduct was not part of his work when the accident occurred," the jury was charged under Pa. SSJI (Civ) § 6.30 (6th ed.) regarding the factors to be considered in determining whether [Mr.] Gesselman was acting within the course and scope of his employment at the time of the accident. (***Id.*** at … 102-103).
>
> Immediately thereafter, the jury was provided instructions pertaining to "the rules of the road" which governed [Mr.] Gesselman's actions as a motorist. (***Id.*** at … 103). The jury was provided with three separate negligence *per se* instructions under Pa. SSJI (Civ) §13.100 (6th ed.) for driving in excess of the posted speed limit, 75 Pa.C.S. §3362, traveling at a reasonable and prudent speed under the circumstances that would "permit the driver to bring his vehicle to a stop within the assured clear distance ahead," 75 Pa.C.S. § 3361, and yielding the right-of-way to a pedestrian within an unmarked crosswalk at an intersection, 75 Pa.C.S. § 3542. (***Id.*** at … 103-107). On each occasion, the jury was expressly advised that "if you find that [Five Star's] agent violated this law, then you must find that [Five Star] was negligent," but that even if the jury concluded that Five Star's "agent did not violate this law, [it] must still decide whether [Five Star's] agent was negligent because he failed to act as a reasonably careful person would under

the circumstances." (*Id.* at … 104, 105-106, 106-107). Additionally, in accordance with Pa. SSJI (Civ) § 13.100, the jury was given a distinct instruction concerning 49 C.F.R. § 392.14, stating "that extreme caution in the operation of a commercial motor vehicle must be exercised when hazardous conditions, such as those caused by fog, adversely affect visibility or traction" and "that the speed of the commercial vehicle must be reduced when such conditions exist," and was informed that if "[Five Star's] agent violated this regulation, then his violation of this regulation is evidence that you may consider, along with all the other evidence, in deciding whether [Five Star] was negligent." (*Id.* at … 107).

After the jury was finished with instructions pertaining to Five Star's vicarious liability for the actions of Gesselman, it was charged relative to Five Star's direct liability. To that end, the jury was advised that "[i]n addition to asserting a vicarious negligence claim against [Five Star] for the actions of its alleged agent, [Appellant] also asserts" claims against Five Star for negligent hiring of [Mr.] Gesselman, negligent supervision, direction, or control of [Mr.] Gesselman, and negligent entrustment of a vehicle to [Mr.] Gesselman, and was instructed as to the elements of those three causes of action in accordance with Pa. SSJI (Civ) §§ 6.70, 6.80, and 13.71 (6th ed.). (*Id.* at … 107-109). To ensure that the jury understood that the negligence and causation inquiries on the verdict slip applied not only to the vicarious liability claims against Five Star for the conduct of [Mr.] Gesselman, but also to the direct negligence claims against Five Star, the jury was specifically informed:

> You must decide whether [Five Star] was negligent in any of these respects. And when I say in any of these respects, I mean either for the conduct of [Mr.] Gesselman, if he is found to be an agent of [Five Star], or for negligent hiring of [Mr.] Gesselman, or for negligent supervision of [Mr.] Gesselman, or for negligent entrustment of a motor vehicle. If you decide that [Five Star] was negligent in any of these respects, you will then proceed to answer question number two on the verdict slip and determine whether that negligence was a factual cause of the accident.

- 8 -

>   (*Id.* at … 109-110).

(Trial Court Opinion, filed 5/9/25, at 14-17) (footnotes omitted).

The court further reviewed the verdict sheet with the jury. The jury did not ask any questions regarding the instructions while deliberating. The jury returned the following verdict:

KYLIE MAJOR,

      Plaintiff

  vs.

FIVE STAR EQUIPMENT, INC.

      Defendant

: IN THE COURT OF COMMON PLEAS
:  OF LACKAWANNA COUNTY
:
:   NO. 2020 CV 3550
:
:
:
:
:
:

**JURY VERDICT SLIP**

**QUESTION 1:**

Do you find that the Defendant, Five Star Equipment, Inc., was negligent?

             _X_ Yes  ____No

*If you answer Question No. 1 "No," you should not answer any further questions and should instead advise the tipstaff that you have reached a verdict. If you answer Question No. 1 "Yes," then proceed to answer Question No. 2.*

**QUESTION 2:**

Was the negligence of the Defendant, Five Star Equipment, Inc., a factual cause in

bringing about the accident on October 8, 2019?

             _X_ Yes  ____No

*If you answer Question No. 2 "No," you should not answer any further questions and should instead advise the tipstaff that you have reached a verdict. If you answer Question No. 2 "Yes," then proceed to answer Question No. 3.*

**QUESTION 3:**

Was the Plaintiff, Kylie Major, negligent?

             _X_ Yes  ____No

*If you answer Question No. 3 "No," do not answer Question No. 4 or Question No. 5 and instead advise the tipstaff that you have reached a verdict.*

**QUESTION 4:**

Was the negligence of the Plaintiff, Kylie Major, a factual cause in bringing about the accident on October 8, 2019?

X Yes ____ No

*If you answer Question No. 4 "No," do not answer Question No. 5 and instead advise tipstaff that you have reached a verdict. If you answer Question No. 4 "Yes," then proceed to answer Question No. 5.*

**QUESTION 5:**

Taking the combined negligence that was a factual cause in bringing about the accident on October 8, 2019, as 100%, what percentage of that causal negligence was attributable to the parties that you have found to be negligent?

Percentage of causal negligence attributable to Defendant, Five Star Equipment, Inc. (answer this question only if you answered "Yes" to Questions No. 1 and No. 2)

25 %

Percentage of causal negligence attributable to Plaintiff, Kylie Major (answer this question only if you answered "Yes" to Questions No. 3 and No. 4)

75 %

TOTAL ____ 100%

*Please have the jury foreperson sign and date the verdict slip and then advise the tipstaff that you have reached a verdict.*

Dated: November 20, 2024 _____
Jury Foreperson

(Jury Verdict Slip, filed 11/20/24).

On Monday, December 2, 2024, Appellant filed a timely post-trial motion, which the court denied on May 9, 2025. That same day, judgment was entered in favor of Five Star and against Appellant. Appellant filed a

notice of appeal on June 5, 2025. That same day, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on June 25, 2025.

Appellant raises the following issues for our review:

> Where [Five Star] throughout the jury trial of this matter disputed the agency relationship between itself and the individual operating its vehicle, which struck Appellant while crossing a street, but, as here, never requested special interrogatories for the jury to make a factual determination as to said agency relationship, did the trial court commit reversible error in its formulation of the verdict slip and related jury instructions by failing to require separate findings on agency, failing to distinguish between vicarious liability and direct negligence theories, and failing to list each theory of liability on the verdict slip independently?
>
> Did the trial court err in granting partial summary judgment on behalf of [Five Star], thereby dismissing [Appellant's] claim for recklessness and in excluding relevant post-accident evidence regarding Appellee driver's competence, thereby permitting comparative negligence arguments before the jury that Pennsylvania law would have otherwise barred pursuant to 42 Pa.C.S. § 7102, thereby depriving the jury of critical liability evidence?
>
> Where, the trial court abuses its discretion in bifurcating a trial pursuant to Pa.R.C.P. 213(b), and, as here, committed other errors during the course of the trial, whether the cumulative effect of those errors, including the defective verdict slip, improper dismissal of recklessness claims, evidentiary exclusions, and bifurcation, combined to deprive Appellant of a fair trial thereby warranting reversal and remand?

(Appellant's Brief at 10-11).

In her first issue, Appellant asserts that Five Star disputed at trial that Mr. Gesselman was acting as its agent at the time of the accident. Appellant

contends that because the issue was disputed, there should have been a special interrogatory on the verdict sheet for the jury to determine whether they found that Mr. Gesselman was acting as Five's Star's agent at the time of the accident. Appellant argues that Five Star did not request that such a question be included in the verdict sheet and as such, any resulting ambiguity should be held against Five Star. Additionally, Appellant contends that the verdict slip erroneously compressed multiple independent theories of liability into a single negligence inquiry. Appellant asserts that this forced "the jury to perform mental gymnastics, answering multiple questions through a single interrogatory with no mechanism to record distinct findings." (*Id.* at 28). Appellant claims that she was prejudiced as a result because if the theories of liability had been listed individually, the jury may have found that Five Star's combined percentage of fault, based on all the theories of liability, was higher than the percentage assigned to Appellant. Appellant concludes that the court erred by providing the jury with a deficient verdict sheet, and this Court must grant relief in the form of a new trial. We disagree.

In evaluating a request for a new trial, this Court has stated:

> Our standard of review regarding a trial court's denial of a motion for a new trial is limited[.] The power to grant a new trial lies inherently with the trial court and we will not reverse its decision absent a clear abuse of discretion or an error of law[,] which controls the outcome of the case. In conducting review, we employ a two-part analysis[.] First, we determine if an error occurred. If so, we ascertain whether the error resulted in prejudice necessitating a new trial. Under the second aspect of this analysis, the consideration of all new trial claims is grounded firmly in the

harmless error doctrine. The error in question must have affected the verdict.

***Chavers v. 1605 Valley Center Pky, LP***, 294 A.3d 487, 503 (Pa.Super. 2023) (citations and quotation marks omitted).

Additionally,

> In Pennsylvania, verdicts may be general, special, or general with special findings. A general verdict is a finding by the jury in terms of the issue or issues referred to them and is, either wholly or in part, for the plaintiff or for the defendant. … In contrast, when the trial court exercises its discretion to employ a general verdict with special findings, … the analytical subparts of the jury's process will be set forth in individual questions to be answered by the jury, and the answers thereto are always given in connection with the ultimate general verdict.

***Fritz v. Wright***, 589 Pa. 219, 233-34, 907 A.2d 1083, 1091 (2006) (citations omitted).

"A party is not entitled to have special interrogatories submitted to the jury." ***Id.*** at 234 n.8, 907 A.2d at 1091 n.8. "It is within the discretion of the trial judge whether to grant or refuse a request to submit special interrogatories to the jury." ***Wiggins v. Synthes (U.S.A.)***, 29 A.3d 9, 18 (Pa.Super. 2011). The trial court "may grant or refuse a request for special findings on the basis of whether such would add to the logical and reasonable understanding of the issue." ***Century 21 Heritage Realty, Inc. v. Bair***, 563 A.2d 114, 116 (Pa.Super. 1989). It is not reversible error for a court to refuse to submit special interrogatories to the jury where the issues are neither complex nor lengthy. ***See Moran ex rel. Estate of Moran v. G. & W.H.***

*Corson, Inc.*, 586 A.2d 416, 429 (Pa.Super. 1991), *appeal denied*, 529 Pa. 650, 602 A.2d 860 (1992). **See also Harsh v. Petroll**, 840 A.2d 404, 440 (Pa.Cmwlth. 2003), *aff'd*, 584 Pa. 606, 887 A.2d 209 (2005) (concluding court did not err in denying appellant's request to submit special interrogatories to jury regarding different theories of negligence in product liability case).[3]

Instantly, the trial court found that Appellant waived her claim that a special interrogatory inquiring whether Mr. Gesselman was an agent of Five Star should have been included on the verdict sheet. Notably, Appellant's proposed verdict sheet did not include a question regarding agency and Appellant did not request that an agency question be added while discussing her objections to the verdict sheet during the charging conference. While Appellant referenced the fact that Five Star disputed agency as support for her request to include separate questions regarding the different theories of negligence on the verdict sheet, Appellant's counsel did **not** request that a question regarding agency be added. As such, we agree with the trial court that Appellant waived this issue for purposes of appeal.[4] **See Kimble v. Laser**

_____

[3] Although opinions of the Commonwealth Court are not binding on this Court, we may rely on them for their persuasive value. **See In re Brown**, 30 A.3d 1200, 1204 n.2 (Pa.Super. 2011).

[4] The vast majority of Appellant's argument in her brief on this issue is based on her assertion that Five Star, as the party who disputed agency, was required to request a special interrogatory on agency. Appellant claims that any ambiguity resulting from Five Star's failure to do so should be construed against Five Star. In support of this argument, Appellant cites to **Shiflett v.**
*(Footnote Continued Next Page)*

_____

***Lehigh Valley Health Network, Inc.***, 655 Pa. 115, 217 A.3d 225 (2019), ***Cowher v. Kodali***, 674 Pa. 666, 283 A.3d 794 (2022), and ***Spencer v. Johnson***, 249 A.3d 529 (Pa.Super. 2021). Nevertheless, these cases do not support Appellant's position. In fact, they reinforce that Appellant's claim is waived. In ***Shifflet***, the jury returned a verdict in favor of the plaintiff, but the verdict sheet did not specify which theory of liability, of the two the plaintiff asserted, underpinned the jury's determination. This Court decided that one of the theories of liability was time barred and should not have been submitted to the jury. This Court granted a new trial because it was unclear whether the jury's verdict was based on the properly submitted theory or the time barred theory. Our Supreme Court reversed, holding that the defendant failed to request a special interrogatory to clarify the jury's verdict and could not then seek to invalidate the verdict based on an ambiguity it could have sought to prevent. Similarly, in ***Cowher***, the jury awarded damages to the plaintiff, but the verdict sheet did not itemize the damages or specify whether any portion of the damages was for pain and suffering. This Court determined that the plaintiff's expert testimony regarding pain and suffering should have been precluded and thus remanded for a new trial on damages. Again, our Supreme Court reversed holding that the defendants waived their claim for a new trial by failing to request a special interrogatory itemizing the damages. In ***Spencer***, the jury returned a verdict in favor of the plaintiff and found that three defendants, one of whom was the employer of the other, shared liability for plaintiff's injuries. The plaintiff sought to mold the verdict to make the employer jointly and severally liable for the employee's negligence. The trial court denied the motion, noting that the verdict slip did not specify whether the jury found that the employer was vicariously liable for the employee's actions. This Court reversed based on ***Shiflett***, deciding that the employer did not seek a special interrogatory and that the plaintiff as "the verdict winner … receive[s] the benefit of doubt in terms of these ambiguities in the verdict sheet." ***Spencer, supra*** at 557.

Here, there is no similar ambiguity in the verdict as in ***Shiflett***, ***Cowher***, and ***Spencer***. None of the theories of negligence on which the jury could have based its determination are invalid. As such, the jury's resolution of the question of agency does not result in an ambiguity in the verdict such that it may be rendered invalid or unenforceable. Therefore, ***Shiflett***, ***Cowher***, and ***Spencer*** are inapplicable to the issue here. Additionally, even if there was a similar ambiguity in the verdict in this case, Five Star is the verdict winner and Appellant is the party seeking to invalidate the verdict based on an alleged ambiguity. As such, Five Star's failure to request a special interrogatory is irrelevant here. Rather, under ***Shiflett***, ***Cowher*** and ***Spencer***, Appellant's
*(Footnote Continued Next Page)*

- 16 -

*Spine Institute, LLC*, 264 A.3d 782, 794 (Pa.Super. 2021), *appeal denied*, 672 Pa. 589, 274 A.3d 722 (2022) (concluding that appellant waived challenge to format of verdict sheet by failing to object to issue at trial).

Regarding Appellant's claim that the verdict sheet should have included separate questions as to each theory of negligence Appellant asserted against Five Star, the trial court determined that such a special interrogatory was unnecessary in this case. The court's instructions to the jury specified all the theories of negligence that Appellant asserted against Five Star, including vicarious liability based on the actions of Mr. Gesselman. The court repeatedly instructed the jury that if they found negligence on any of these grounds, they must find that Five Star was negligent. We cannot say that the issues in this case were so complex or lengthy that the jury would be unable follow the court's instructions without a special interrogatory. *See Moran ex rel. Estate of Moran, supra*. On this record, we discern no abuse of discretion in the court's denial of Appellant's request for special interrogatories. *See Wiggins, supra*; *Harsh, supra*.

Additionally, Appellant cannot establish that she suffered any prejudice by the absence of separate interrogatories on the verdict sheet. Regardless of the underlying theory or theories that supported the determination, the jury ultimately found that both Five Star and Appellant were causally negligent.

---

failure to request a special interrogatory regarding agency would result in waiver of her claim for a new trial.

There is no support in the record for Appellant's claim that if the separate theories of negligence were listed on the verdict sheet, the jury would have apportioned a higher percentage of the causal negligence to Five Star. This argument entirely ignores that the jury specifically found that 75% of the causal negligence was attributable to Appellant. Thus, even if there were individual lines to apportion liability to Five Star based on the individual theories of liability, the total percentage attributable to Five Star would not have exceeded 25%, resulting in the same ultimate verdict in favor of Five Star. Appellant's argument hinges on the erroneous assumption that the jury's assignment of fault to Appellant was arbitrary. There is no support in the record for this contention. As such, even if the court erred in denying Appellant's request for special interrogatories, Appellant was not prejudiced as a result and would not be entitled to a new trial. **See Chavers, supra**.

In her second issue, Appellant asserts that at the summary judgment stage, she demonstrated that Five Star failed to keep adequate records of its drivers' hours, in compliance with federal regulations, to ensure that its drivers were not fatigued or working past mandated driving hour restrictions. Appellant further argues that Mr. Gesselman acted recklessly in driving the vehicle by ignoring fatigue risks and driving above the posted speed limit, and Five Star was vicariously liable for Mr. Gesselman's actions. Appellant contends that she was prejudiced by the court's decision to dismiss Appellant's claims of recklessness because it affected the evidence and the theories of

liability that were presented at trial. Appellant concludes the court erred in granting partial summary judgment dismissing Appellant's claims of punitive damages, and this Court should grant a new trial. We disagree.

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. *Mee v. Safeco Ins. Co. of America*, 908 A.2d 344, 347 (Pa.Super. 2006).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa.Super. 2000) (internal citations omitted). Our scope of review is plenary. *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied*, 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002).

In reviewing a trial court's grant of summary judgment:

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

> Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.
>
> Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Chenot v. A.P. Green Services, Inc.*, 895 A.2d 55, 61 (Pa.Super. 2006) (internal citations and quotation marks omitted).

Further, "[w]here the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment." *Gubbiotti v. Santey*, 52 A.3d 272, 273 (Pa.Super. 2012), *appeal denied*, 620 Pa. 701, 67 A.3d 797 (2013). "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." *Id*.

Regarding punitive damages, our Supreme Court has stated:

> [P]unitive damages are an extreme remedy available in only the most exceptional matters. Punitive damages may be appropriately awarded only when the plaintiff has

- 20 -

established that the defendant has acted in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others. A defendant acts recklessly when his conduct creates an unreasonable risk of physical harm to another [and] such risk is substantially greater than that which is necessary to make his conduct negligent. Thus, a showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed. Rather, the plaintiff must adduce evidence which goes beyond a showing of negligence, evidence sufficient to establish that the defendant's acts amounted to intentional, willful, wanton or reckless conduct.

***Phillips v. Cricket Lighters***, 584 Pa. 179, 188–89, 883 A.2d 439, 445–46 (2005).

Additionally, for a motor vehicle accident, "punitive damages can be awarded against a defendant only if the plaintiff shows that the defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and acted or failed to act in conscious disregard of that risk." ***Livingston v. Greyhound Lines Inc.***, 208 A.3d 1122, 1130 (Pa.Super. 2019). "The mere fact that the defendant knew of a possibility of accidents and did not undertake additional safety measures is not sufficient by itself to support a claim for punitive damages." ***Id.***

Here, the only evidence that Appellant cited in support of her claim for punitive damages against Five Star directly was that Five Star failed to keep adequate records to ensure that its drivers did not work past the federally mandated hours restriction and drive while fatigued. Nevertheless, Appellant failed to produce any evidence to show that Mr. Gesselman was fatigued due

to driving extended hours over the federally mandated hours restriction when the accident occurred. The evidence demonstrates the contrary. The uncontroverted evidence established that Mr. Gesselman was driving from his home to work in the morning when the accident occurred. He was reporting to work to begin his shift at the time. As such, there is no support in the record to suggest that the accident was caused in any part by fatigue due to Mr. Gesselman driving continuous, extended hours. Therefore, Appellant failed to produce any evidence to show that Five Star's alleged reckless conduct in failing to keep adequate records resulted in harm to Appellant. On this record, we cannot say the court erred in dismissing Appellant's punitive damages claim against Five Star based on its direct actions. **See**; **Phillips, supra**; **Mee, supra**.

Regarding Appellant's claim for punitive damages based on vicarious liability, the trial court explained that the only evidence Appellant cited as proof of Mr. Gesselman's reckless conduct was "his operation of the service truck in excess of the posted speed limit and his entry into the left lane while momentarily viewing his sideview mirror for traffic, rather than maintaining a continuous view of the roadway ahead of him." (Trial Court Opinion at 43). The court found that these actions demonstrate only negligence, or at best, gross negligence. They are insufficient to establish reckless conduct to justify

punitive damages.[5]   We agree with the court's assessment.  *See Smith v.*

*Brown*, 423 A.2d. 743 (Pa.Super. 1980) (holding that allegations that

defendant was driving too fast for conditions, failed to have vehicle under

proper control, and failed to have due regard for plaintiff's position on road as

pedestrian was insufficient to plead claim for punitive damages).  *Compare*

*Dillow  v.  Myers*, 916 A.2d 698, 702 (Pa.Super. 2007) (concluding that

evidence that plaintiff sent truck out on road when load could not properly be

distributed, failed to brake when traveling down hills so that truck exceeded

speed limit, drove with limited visibility because view from side mirror was

obscured, and changed lanes without signaling was sufficient to justify

punitive damages under these circumstances).  As such, the court did not

abuse its discretion in granting Five Star's motion for partial summary

judgment and Appellant is not entitled to relief on this issue.[6]  *See Phillips,*

_____

[5] Appellant asserts that the court applied an erroneous legal standard in evaluating Appellant's claim because it improperly conflated the standard for evaluating recklessness with the higher standard for evaluating claims for punitive damages.  Regardless of Appellant's framing of the issue as a dismissal of Appellant's assertions of recklessness, the decision that Appellant is challenging on appeal is the court's grant of partial summary judgment. Five Star moved for partial summary judgment seeking to dismiss Appellant's claims of punitive damages.  The court granted Five Star's motion and dismissed Appellant's claims for punitive damages.  On this record, the court evaluated Appellant's claim under the proper standard.

[6] Appellant further asserts that he was prejudiced by the court's grant of partial summary judgment because it led to consequences that affected the outcome of trial.  Specifically, Appellant complains that the dismissal of Appellant's assertions that Five Star engaged in reckless conduct permitted
*(Footnote Continued Next Page)*

*supra*; *Mee, supra*.

In her third issue, Appellant claims that the court's decision to bifurcate the trial was based solely on the court's unsupported belief that the trial would exceed the five days allotted for trial. Appellant maintains that the fact that the liability phase of the trial consumed only three days disproves the court's reasoning. Appellant further claims that bifurcation resulted in prejudice to Appellant because the extent of Appellant's injury was essential context that the jury needed to evaluate Five Star's breach of duty. Appellant further claims that bifurcation forced the court to issue a verdict slip that asked whether Five Star was "a factual cause of the accident" rather than "a factual cause of the harm." Appellant claims that this change "created an entirely new and unfounded element of negligence that [Appellant] was forced to prove which does not comport with Pennsylvania law." (Appellant's Brief at 62). Appellant concludes that the trial court's erroneous decision to bifurcate the trial exacerbated the cumulative prejudicial effect of the other errors, resulting in an unreliable verdict, and this Court must remand for a new trial. We disagree.

_____

the use of comparative negligence at trial. Appellant further claims that if Appellant's claims of recklessness were not dismissed, post-accident evidence would have been admissible at trial to support those claims. Appellant does not appear to be challenging the court's decisions in this regard but noting that these were prejudicial consequences of the court's decision to grant partial summary judgment. As we have determined that the court did not err in granting partial summary judgment, we need not discuss Appellant's argument in this regard further.

Pennsylvania Rule of Civil Procedure 213 authorizes a court to order a separate trial on any issue in a case "in furtherance of convenience or to avoid prejudice." Pa.R.C.P. 213(b). "The decision whether to … bifurcate under Rule 213(b) is entrusted to the discretion of the trial court, which is in the best position to evaluate the necessity for taking measures the rule permits." **Ball v. Bayard Pump & Tank Co.**, 620 Pa. 289, 304, 67 A.3d 759, 767 (2013). "An abuse of discretion occurs only where the trial court has reached a conclusion that overrides or misapplies the law, or when the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will." **Id.** at 303-04, 67 A.3d at 767. "Before ordering bifurcation, the court should carefully consider the issues raised and the evidence to be presented to determine whether the liability and damages issues are interwoven, as is often the case in personal injury litigation." **Ptak v. Masontown Men's Softball League**, 607 A.2d 297, 300 (Pa.Super. 1992), *appeal denied*, 533 Pa. 661, 625 A.2d 1194 (1993).

Further, in a personal injury case:

> [T]he plaintiff must establish two causal [n]exuses in order to be entitled to recovery: (a) a causal nexus between the defendant's conduct and the event sued upon; and (b) a causal nexus between the event sued upon and the plaintiff's injuries.
>
> The causal nexus between the defendant's conduct and the event sued upon relates to the liability portion of plaintiff's cause of action. Here, we use the term "liability" to mean legal responsibility for the event upon which suit is based …

- 25 -

> Whether the event sued upon caused any injuries to the plaintiff is another matter entirely. The causal nexus between the event sued upon and the plaintiff's injuries is strictly referable to the damages portion of the plaintiff's cause of action.

*Derbyshire v. Jefferson Frankford Hospital*, 329 A.3d 676, 684 (Pa.Super. 2024), *appeal denied*, __ Pa. __, 341 A.3d 1271 (2025), (quoting and adopting *Morgan v. Compugraphic Corp.*, 675 S.W. 2d 729 (Tex. 1984)).

Here, the trial court explained that it scheduled five days for trial in this case based on the parties' estimation for the amount of time they believed trial would take. At the pre-trial conference, the parties indicated that they intended to call eleven lay witnesses and nine expert witnesses to testify. The parties further estimated that one of the four days scheduled would be taken up by the jury selection process, the court's introductory instructions and counsel's opening statements. The court determined that it was highly unlikely that the remaining four days of trial would be sufficient time for all the witness testimony, closing arguments, jury instructions and deliberation. The court expressed concern that it would be forced to declare a mistrial if the trial was not completed in the allotted time due to the predetermined judicial calendar which did not leave flexibility for additional days for this trial. Such a result would be a waste of judicial resources. The court determined that if it bifurcated the trial into liability and damages phases, a trial on the issue of liability alone was much more likely to be completed within the allotted time. The court further found that the evidence that was to be presented on those

two issues did not overlap. As such, the court concluded that in the interest of judicial economy and convenience, bifurcation of the trial was appropriate.

The court further explained:

> The number of trial days that were actually used for the litigation of liability only in this matter vindicate the decision to bifurcate this trial. Although the parties only called four lay witnesses and one expert witness during the liability trial, it consumed three full trial days, with the jury returning its verdict at 5:23 p.m. on the evening of the third day of trial. It is inconceivable that the parties would have been able to present the testimony of seven additional lay witnesses and eight more expert witnesses in a mere two days.

(Trial Court Opinion at 51).

Further, Appellant failed to establish that he was prejudiced by the court's decision. Other than making a conclusory statement, Appellant entirely fails to explain why the extent of Appellant's injuries was relevant for the jury to evaluate Five Star's breach of duty. Regarding the phrasing of the causation issue on the verdict sheet, the trial court explained:

> Since the liability and damages portions of this case were bifurcated, the jury only considered the causal nexus between Five Star's negligence and the occurrence of the accident on October 8, 2019. The causal connection between Five Star's negligence and the accident was hotly contested, whereas the nexus between the accident and [Appellant]'s injuries was largely undisputed. In fact, Five Star agreed that if [Appellant] succeeded with her liability claim and a second, damages phase of the trial was conducted, the verdict slip would not include a "factual cause of harm" inquiry since all the expert medical witnesses agreed that the accident caused some compensable harm. In the event of a damages trial, … a causation interrogatory would not have appeared on the verdict slip.

(Trial Court Opinion at 27-28) (citations omitted).

On this record, we discern no abuse of discretion in the court's decision to bifurcate the trial. ***See Ball, supra***. ***See also Ptak, supra*** (holding court did not abuse its discretion in bifurcating trial on liability and damages where it was undisputed that appellant's injuries were caused by accident). As we have concluded that each of Appellant allegations of error lack merit, Appellant is not entitled to relief as a result of the cumulative prejudice of those alleged errors. Accordingly, Appellant has failed to establish any of her issues on appeal, and we affirm.

Judgment affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/30/2026